IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| MEDSOURCE, INC.,<br><br>     Plaintiff,<br><br><br><br><br><br><br><br><br>     vs.<br><br><br><br>ALPHA TRADING, INC., WALGREEN CO., UNITED STATES, and JOHN DOES 1-100,<br><br>     Defendants. | ORDER GRANTING MOTION TO DISMISS, MOTION FOR ATTORNEY'S FEES, AND ORDERING FUNDS DEPOSITED IN THIS ACTION TO BE TRANSFERRED TO THE WESTERN DISTRICT OF KENTUCKY CASE NO. 3:06-CV-184-S<br><br><br><br><br>Case No. 1:05-CV-00148 PGC |

Plaintiff Medsource filed an interpleader with this court when it became apparent that the

payment of some of its invoices might be for stolen goods.  Medsource made no claim to

ownership of the disputed funds in its interpleader, and sought declaration by the court under 28

U.S.C. § 2361 as to the ownership of these funds.  On Medsource's own motion, the court

ordered Medsource to deposit funds in the amount of $62,341.53 into this court to be held in an

interest bearing account pending the outcome of this matter.  The United States has now filed a

verified complaint for forfeiture in rem of the interpleaded funds in the Western District of

Kentucky under 18 U.S.C. § 981(a)(1)(A).  Medsource has moved to dismiss its interpleader and

requests its costs and attorney's fees incurred in bringing the interpleader action.

It is clear that the court has discretion to award costs and attorney's fees to the

stakeholder in an interpleader action.[1]  Typically, such fees are available when the party initiating

the interpleader (1) is disinterested, (2) admits liability, (3) deposits the funds with the court, and

(4) asks to be relieved of any further liability associated with the funds.[2]  In this case, Medsource

has fulfilled these requirements.  The United States argues, however, that Medsource should not

receive fees for three reasons: (1) attorney's fees are not recoverable from an interpleader fund in

which the United States claims an interest; (2) Medsource is "responsible, at least in part, for this

litigation"; and (3) that crime should not be permitted to pay.

The United States argues that Medsource is not entitled to fees because the United States

claims an interest to the interpleader fund through its recently filed civil forfeiture claim.  The

United States relies on the *Wright & Miller* treatise, which states that a "stakeholder's attorney's

fees and costs may not be awarded against the United States or against a fund to which the

United States asserts a right."[3]  That proposition of law, however, stems from cases where the

government has a previously-filed federal tax lien against the stake, and awarding attorney's fees

---

[1]*See, e.g.*, *Abex Corp. v. Ski's Enters. Inc.*, 748 F.2d 513, 516 (9th Cir. 1984).

[2]*See, e.g.*, *Septembertide Publ'g v. Stein & Day, Inc.*, 884 F. 2d 675, 683 (2d Cir. 1989);
*Smith Barney, Harriss Upham & Co. v. Connolly*, 887 F. Supp. 337, 346 (D. Mass. 1994);
*United Bank of Denver, Nat'l Assoc. v. Oxford Props., Inc.*, 683 F. Supp. 755, 756-57 (D. Colo.
1988).

[3]*See* 26 U.S.C. §§ 6321, 6322; *see also* CHARLES ALAN WRIGHT, ARTHUR R. MILLER &
MARY KAY KANE, 7 FEDERAL PRACTICE AND PROCEDURE 3d §1719 at 660.

would give the stakeholder priority over the United States.[4]   This would be contrary to sections

6321 and 6322 of the Internal Revenue Code, which specifically protect the interpleader fund

from attorney's fees and costs reductions prior to the satisfaction of the federal tax lien.  Indeed,

the "judicial prerogative to award stakeholders their attorney's fees must give way to the

supremacy of the federal tax lien law whenever an award would invade the amount subject to tax

lien."[5]

Virtually all of the cases holding that a federal tax lien claims priority over the

discretionary award of attorney's fees and costs in an interpleader based their decisions on the

application of 26 U.S.C. §§ 6321, 6322 to the case.[6]  In situations outside the reach of these

specific statutes, the court cannot find any other authority for the United States' position – a

position that is contrary to the general rule that "'follows the traditional equity rule that gives the

trial court discretion to allow a disinterested stakeholder to recover attorney's fees and costs from

the stake itself.'"[7]  Since 18 U.S.C. § 981 does not provide for priority of civil forfeitures over

---

[4]*Id*.

[5]*Spinks v. Jones*, 499 F.2d 339, 340 (5th Cir. 1974) (citing *United States v. Chapman*, 281 F.2d 862, 870 (10th Cir. 1960)); *see also Cable Atlanta, Inc. v. Project, Inc.*, 749 F.2d 626, 626-27 (11th Cir. 1984); *Campagna-Turano Bakery, Inc. v. United States*, 632 F.2d 39, 41 (7th Cir. 1980).

[6]*See, e.g.*, *Cable Atlanta, Inc.*, 749 F.2d at 626-27; *Campagna-Turano Bakery, Inc.*, 632 F.2d at 41.

[7]*First Trust Corp. v. Bryant*, 410 F.3d 842, 856 (6th Cir. 2005) (quoting 4 MOORE'S FEDERAL PRACTICE § 22.06, at 22-98 (3d ed. 2002)); *see also Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1497 (11th Cir. 1986) ("[I]n an interpleader action costs and attorneys' fees are generally awarded . . . to the plaintiff who initiates the interpleader as a mere disinterested stakeholder."); *United States v. Fidelity & Guar. Co. v. Sidwell*, 525 F.2d 472, 475 (10th Cir. 1975).

attorney's fees and costs in the same manner as 26 U.S.C. §§ 6321 and 6322 do for federal tax

liens, the court finds the United States' arguments unpersuasive.

The United States' second argument, that Medsource is "at fault" and therefore should

not receive its attorney's fees and costs, is equally unpersuasive.  The United States has not

charged Medsource with any wrongdoing or crime, but still desires to impute Medsource's guilt

because it should have know that it was buying goods at extremely low prices.  It also references

testimony by the bookkeeper for Alpha Trading, the company charged with criminal wrongdoing,

stating the Medsource required the removal of internal security devices from boxes prior to

delivery.  Thus, the United States argues Medsource "should have known" that its

pharmaceuticals were stolen.

There are two problems with the government's argument.  First, it has made factual

representations (e.g., that Medsource required the removal of internal security devices) without

any proof, including any supporting affidavits, declarations, or comparable documentation.  The

court is reluctant to adopt the government's position based simply on unsworn representations.

Second, the government has provided general assertions that are not sufficiently specific to

warrant the conclusions that it draws.  In particular, to make the inference that Medsource

"should have known" that various products were stolen, the court would need something far

more revealing than the representation that prices "were below the lowest prices for which any

legitimate company could acquire these same products."  The court would generally give the

United States another opportunity to file a more specific pleading on these points.  But given the

relatively modest amount of money involved, it seems simpler – and fairer to Medsource on the

record presently before the court – to simply award attorney's fees and costs.

Additionally, the United States argues that Medsource should not be awarded funds that represent the proceeds of crime. The government relies on the purpose animating forfeiture laws – that crimes does not pay. The government asserts that to award fees here would change the law to mean "crime does not pay, except for attorney fees" – something precluded by the Supreme Court's decision in *United States v. Monsanto*.[8]

*Monsanto* involved an effort by a defendant accused of racketeering to use monies that the government alleged were profits from drug trafficking to pay his attorney. The government obtained a restraining order, which the Supreme Court upheld. The Court explained: "[I]f the Government may, post-trial, forbid the use of forfeited assets to pay an attorney, then surely no constitutional violation occurs when, *after probable cause is adequately established*, the Government obtains an order barring a defendant from frustrating that end by dissipating his assets prior to trial."[9]

This case is readily distinguishable. The court does not have probable cause to believe Medsource has committed a crime. Nor does the government represent that it is likely to charge Medsource with a crime – although it does concede "it is anticipated that Medsource will deny any knowledge that the products were stolen." Finally, the funds at issue in this case were (unlike the drug proceeds at issue in *Monsanto*) voluntarily placed by Medsource into the registry of the court to help determine who should receive them. Given the discretion afforded to the

---

[8]   491 U.S. 600, 614 (1989).

[9]   *Id.* at 615 (emphasis added).

court under Fed. R. Civ. P. Rule 22 and 28 U.S.C. § 2361, the court finds that modest attorney's

fees and costs are appropriate to Medsource in this action.

For good cause appearing, the court GRANTS Medsource's motion to dismiss (#10), and

GRANTS Medsource's motion for attorney fees and costs associated with filing the interpleader

in the amount of $4,658.  The clerk's office is directed to pay this sum to Medsource out of the

interpleaded funds.[10]  The court also orders that the remainder of the funds deposited with the

registry of the court be transferred to the Western District of Kentucky in case number 3:06-CV-

184-S.  According to the complaint filed in that case, the funds are to be held in escrow by the

United States Marshal's Service pending the outcome of the civil forfeiture action.

The Clerk's Office is directed to close this case.

SO ORDERED.

DATED this 24th day of April, 2006.

BY THE COURT:

_____

Paul G. Cassell
United States District Judge

---

[10]*See United States Fidelity & Guar. Co. v. Sidwell*, 525 F.2d 472, 475 (10th Cir. 1975).